**HAMPTON FOODS, INC., Appellee,**

v.

**The AETNA CASUALTY AND SURETY CO., Appellant.**

**No. 87–1038.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1987.

Decided April 6, 1988.

Rehearing Denied May 4, 1988.

Gary P. Paul, Clayton, Mo., for appellant.

John A. Walsh, Jr., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and ARNOLD and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

The Aetna Casualty and Surety Company (Aetna) appeals from an order of the District Court holding Aetna liable under a business interruption insurance policy for accrued interest on the indebtedness of the insured, Hampton Foods, Inc. (Hampton).

This case is before us for the second time. The first appeal was from the District Court's decision that Aetna's policy provided coverage for losses suffered by Hampton when Hampton was forced to vacate a building that was in danger of collapsing, but that denied recovery to Hampton for lost profits and accrued interest on alleged corporate indebtedness, as well as prejudgment interest and penalties for vexatious refusal to pay. We affirmed the finding of coverage, the denial of liability for lost profits, prejudgment interest, and penalties for vexatious refusal to pay, and reversed and remanded on the issue of Aetna's liability for accrued interest on Hampton's alleged corporate indebtedness. *Hampton Foods, Inc. v. Aetna Casualty and Sur. Co.*, 787 F.2d 349 (8th Cir.1986) (*Hampton Foods I*). A more detailed discussion of the factual background pertinent to the present appeal is contained in that opinion. *See Hampton Foods I*, 787 F.2d at 351.

On remand the District Court was to determine whether and to what extent Aetna should be held liable for the accrued interest on Hampton's alleged corporate indebtedness. In order to make that determination, the District Court needed to resolve the following issues: 1) whether the relevant loans were used for Hampton's business purposes; 2) whether Hampton incurred interest expenses from the loans and, if so, the magnitude of those expenses; 3) the extent to which Hampton would have been able to pay its interest charges had its business not been interrupted; and 4) the time period for which Hampton's accrued interest charges are recoverable. *See Hampton Foods I*, 787 F.2d at 354–55. Aetna contends that the District Court erroneously resolved the first, second, and fourth issues and failed to deal with the third.

The principal issues on appeal are whether the District Court's findings of fact are adequate with respect to the issues we remanded and, if so, whether the findings are clearly erroneous. *See* Fed.R.Civ.P. 52(a).[1]

## I.

In *Hampton Foods I* we held that Aetna could be held liable only "for interest on that portion of the loans used for Hampton's business purposes." *Hampton Foods I,* 787 F.2d at 354. Thus, the District Court was to determine on remand whether the loans underlying the interest charges at issue were used for the business purposes of Hampton. The District Court found that the loans were so used.

A number of loans were made to Don and Joyce Hipp, the principals of Hampton, and apparently were used in their business. But insofar as this appeal is concerned, the argument is over a single $140,000 loan from the Bank[2] to the Hipps.[3] The District Court found that this loan was used for Hampton's business purposes, a finding Aetna attacks as clearly erroneous. We disagree with Aetna.

■ Shortly after receiving this loan, the Hipps loaned $140,000 to Hampton. Aetna argues that the $140,000 Bank loan could not have been "used for Hampton's business purposes" because it was made to the Hipps in their individual capacities before Hampton was established. This argument is, of course, a non sequitur. As Hampton points out, the entire $140,000 later was loaned by the Hipps to Hampton to be used in the business. The question we asked the District Court to answer on remand was not, as Aetna suggests, to whom the Bank made the loan, but whether the loan was "used for Hampton's business purposes." *Hampton Foods I,* 787 F.2d at 354. The District Court answered that question af-

firmatively. Since the entire $140,000 was put into Hampton's business, we cannot say that the District Court's finding is clearly erroneous.

## II.

On remand the District Court was to determine whether Hampton in fact had incurred interest expenses and, if so, the magnitude of those expenses. *See Hampton Foods I,* 787 F.2d at 354. The District Court found that Hampton had incurred an interest obligation on the loan extended by the Hipps to Hampton. The court also determined the amount of that obligation.

■ Aetna contends that Hampton did not incur any interest obligation. Having reviewed the record, however, we do not believe that the District Court's finding is clearly erroneous. It is undisputed that the Hipps extended Hampton a loan of the same size and at the same rate of interest as was provided to the Hipps by the Bank. The Hipps, practically speaking, simply served as a conduit for the funds. There is evidence that Hampton became liable for principal and interest, and even made payments on the loan directly to the Bank. We therefore have no basis for overturning as clearly erroneous the finding that Hampton incurred an interest obligation commensurate with the interest obligation on the loan from the Bank to the Hipps.

## III.

■ In *Hampton Foods I* we held that Hampton's interest expenses "are includable in its damages to the extent Hampton would have been able to pay these charges [out of its business income] had the building difficulties not occurred" and remanded this issue to the District Court for resolution. *Hampton Foods I,* 787 F.2d at 354.

---

**1.** Each of the issues is entirely an issue of fact, except the fourth issue, which involves, in addition to purely factual questions, the question of whether the District Court properly applied *Omaha Paper Stock Co. v. Harbor Ins. Co.,* 445 F.Supp. 179 (D.Neb.1978), *aff'd,* 596 F.2d 283 (8th Cir.1979).

**2.** The "Bank" in this opinion refers to Hampton Metro Bank.

**3.** Appellant presents no arguments specifically addressing any loans other than the $140,000 loan.

On remand the District Court failed to make a finding of fact on this crucial issue. We agree with Aetna that this was error. Apparently, the District Court did not realize that the issue needed to be decided. *See* Designated Record (D.R.) at 243. (District Court states that "Eighth Circuit held that two issues ... needed to be resolved by this trial court," the first being whether the loan was for business purposes and the second being the duration of the theoretical period of restoration).

■ This factual issue must be resolved before liability may be imposed on Aetna. Aetna's liability for interest charges is limited to the interest charges that Hampton would have been able to pay from income generated by its business had the building problems not arisen. To the extent that Hampton could not have met its interest obligations even if it had remained open for business, Aetna cannot be held liable for the interest charges that Hampton incurred while its business was closed. As factfinding is the basic responsibility of the district courts, this crucial issue should not be dealt with for the first time on appeal. *See Pullman–Standard v. Swint,* 456 U.S. 273, 291–92, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982); *DeMarco v. U.S.,* 415 U.S. 449, 450 n., 94 S.Ct. 1185, 1186 n., 39 L.Ed.2d 501 (1974). In circumstances where, as here, the necessary findings of fact have not been made at trial, "the appropriate course of action is to vacate the judgment and remand the case to the District Court." *Rule v. International Ass'n of Bridge Workers Local 396,* 568 F.2d 558, 568 (8th Cir.1977). *See Pullman–Standard,* 456 U.S. at 292 n. 22, 102 S.Ct. at 1792 n. 22 (1982); *Fogarty v. Piper,* 767 F.2d 513, 515 (8th Cir.1985); 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 52.06[2] (2d ed. 1987). We therefore remand this case to the District Court with directions that it make a finding on this pivotal question of fact.

### IV.

In *Hampton Foods I* we remanded the issue of "the time period for which Hampton's continuing interest charges are recov-

erable." *Hampton Foods I,* 787 F.2d at 355. But before doing so, we discussed the approach the District Court was to use to resolve this issue. We first examined the period of coverage contemplated by the insurance policy and noted:

The policy covers losses "during the period of restoration." Part III, subsection C [of the policy], defines "period of restoration" as

[t]he length of time, commencing with the date of damage or destruction, which would be required, with the exercise of due diligence or dispatch, to repair, or rebuild or replace the damaged or destroyed property.

It is clear that this language contemplates the *"theoretical* time period it would have taken to"* reenter business. *Omaha Paper Stock Co. v. Harbor Ins. Co.,* 596 F.2d 283, 290 (8th Cir.1979). *Hampton Foods I,* 787 F.2d at 355 (emphasis in original). We then indicated that the time period for which interest charges are recoverable could extend beyond the theoretical period of restoration under the approach taken by the court in *Omaha Paper Stock Co. v. Harbor Ins. Co.,* 445 F.Supp. 179 (D.Neb.1978), *aff'd,* 596 F.2d 283 (8th Cir.1979). In that case "the court used the standard of a theoretical period of restoration but allowed a reasonable extension of that period where restoration delay was due to actions of the insurance company." *Hampton Foods I,* 787 F.2d at 355. This was the approach that the District Court was to apply on remand.

■ Under the *Omaha Paper Stock* approach, Aetna should be liable for business interruption coverage for the duration of the reasonable period of time needed for Hampton to reenter business plus any delay attributable to Aetna's failure to perform its duties under the policy, but not for any period of delay caused by other obstacles to restoration such as Hampton's alleged lack of due diligence or poor financial condition. The District Court concluded that "the record clearly indicates that [Aetna's] refusal to pay [Hampton] amounts owed to it under the terms of the insurance policy prevented the prompt res-

toration of [Hampton's] business," D.R. at 244, and noted that it believed that Hampton would have received financing to restore the business had Aetna paid what it owed under the insurance policy. D.R. at 244. The District Court rejected Aetna's contention that the delay was (even partly) due to Hampton's failure to act with due diligence or to its poor financial condition. In short, the District Court found that but for Aetna's refusal to pay the amount it owed Hampton under the policy, Hampton could have promptly restored its business and, therefore, the delay in restoration was attributable to Aetna.

■ Aetna argues that even if it had paid what it owed under the policy, the Bank would not have provided the financing needed to restore Hampton's business. Citing Hampton's outstanding debts and lack of assets, Aetna maintains that Hampton's poor financial condition precluded such a loan and that the District Court's finding to the contrary is clearly erroneous.

The record, however, provides support for the District Court's finding. A letter from the Bank indicates that had Aetna promptly paid what it owed Hampton, and had Hampton in turn used the insurance proceeds to reduce what was owed to the Bank, the Bank would have provided the Hipps with financial assistance to restore their business. The letter, dated August 10, 1983 and written by Paul Siebels, then a Bank vice president, states in pertinent part:

> Under the policy of our bank, had the Hipps, operating as Hampton Foods, Inc., been able to reduce the outstanding obligation by one-hundred-thousand dollars ($100,000.00), or more, within a few months after their loss in the summer of 1980, the bank would have assisted the Hipps with financing to reestablish a retail grocery business, based on the satisfactory performance on their credit with the bank.

Plaintiff's Exhibit no. 11. The evidence indicates that during the summer of 1980 Hampton had assets, consisting largely of its claim against Aetna, worth approximately $100,000. In other words, had Aetna paid Hampton's claim, Hampton would have had approximately $100,000 at its disposal, which it could have used to satisfy the Bank's conditions for new financing to restore the business.

Aetna argues that Siebels's letter should not be given much evidentiary weight. Pointing to Siebels's testimony before the District Court, Aetna emphasizes that Siebels says, contrary to his letter, that there was no guarantee that the Bank would have provided the financing. But the weighing of the evidence and the assessment of apparent inconsistencies or conflicts in the evidence is for the trier of fact, not for a court of appeals. Even if we would have weighed the evidence differently, under the clearly erroneous standard of review of Fed.R.Civ.P. 52(a), we would not be entitled to reverse the finding of the District Court. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). While it may not have been a certainty that the Bank would have provided the financing, the evidence sufficiently supports the finding made by the District Court. Because the District Court's view of the evidence is plausible in light of the record viewed in its entirety, we hold that its finding is not clearly erroneous. *See Anderson*, 470 U.S. at 573–74, 105 S.Ct. at 1511–12.

■ Nor are we persuaded by Aetna's argument that as a matter of law Hampton failed to act with due diligence. Aetna maintains that in addition to attempting to find financing the Hipps should have taken "other steps" to restore the business. These "other steps" are, presumably, such things as arranging for a building, equipment, suppliers, a work force and so on. *See* Brief of Appellant Aetna at 29. But as the District Court observed, restoration of the business required financing, and to obtain financing Hampton needed the money owed it under the insurance policy. Thus, when Aetna refused to pay, Hampton had no opportunity to restore the business. D.R. at 245. We do not believe that "due diligence" requires the doing of useless acts, and, for that reason, do not believe

that Hampton was required to locate a building, suppliers, equipment, et cetera, for a business that, absent payment by Aetna, had no chance of being restored.[4] Moreover, there is nothing in the record to suggest that Hampton could not have obtained the other things needed for the restoration of its business had the necessary financing been available.

■ Having found that the delay in restoration resulted from Aetna's conduct and not from Hampton's financial condition or lack of due diligence, the District Court held Aetna liable for interest expenses accruing during the delay. Additionally, the District Court found Aetna liable for the interest expenses accruing over a six-month theoretical period of restoration, to begin upon payment by Aetna of its interest expense obligation. D.R. at 245–46. We find this consonant with the approach in *Omaha Paper Stock.* In essence, it puts Hampton in the position it would have been in had Aetna not caused a delay in restoration.

The District Court also states, however, that the amount it adjudges Aetna to owe Hampton "includes $6,550.20 for a 180–day extension of the restoration period at $36.64 per day. The 180 days shall begin upon entry of the Court's order." D.R. at 246. We have questions regarding this 180–day extension, such as, what the basis is for it and whether it was intended to run concurrently with the six-month theoretical period of restoration. We agree with the District Court that application of the *Omaha Paper Stock* approach would require Aetna to pay for the interest expenses accruing during the period of delay found to have been caused by Aetna and the six-month theoretical period of restoration. But because we do not understand (nor apparently do the parties) the purpose or meaning of the 180–day extension, and because it is not apparent to us how this extension can be justified under *Omaha Paper Stock*, we ask the District Court to re-think this aspect of any judgment it may award to Hampton after further proceedings on remand.

### V.

In summary, we hold that the District Court's findings of fact concerning the purpose of the $140,000 loan, the magnitude of Hampton's interest obligation, and the causal connection between Aetna's failure to pay Hampton's claim and the delay in the restoration of Hampton's business are not clearly erroneous. However, the question of the extent to which Hampton could have paid its interest expenses had it remained open for business must be answered before liability may be imposed on Aetna. For this reason, the District Court's order must be vacated and the case remanded for further proceedings.

If on remand the District Court finds that had Hampton remained open for business it nevertheless would have been unable to meet its interest obligations, then Aetna cannot be held liable for Hampton's interest expenses. On the other hand, to the extent that the District Court finds Hampton could have paid its interest expenses had it remained in business, Aetna is liable for those expenses. In ordering this remand, we point out that Hampton's total recovery of interest expenses should not exceed (1) its interest expenses for the period of delay caused by Aetna's failure to pay, plus (2) its interest expenses for the theoretical six-month period of restoration once payment is made.

The order of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.

---

**4.** The conduct of Hampton sharply contrasts with that of the insured in *Omaha Paper Stock,* where the insured was found to have acted without due diligence. There the insured added to the delay in restoration by "consciously ig- nor[ing] an apparent mistake made by the insurer" and failing to act in a manner "dictated by good business practice." *Omaha Paper Stock,* 445 F.Supp. at 187.