FILED

Feb 28 2024, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court





I N T H E

# Court of Appeals of Indiana

The Trustees of Purdue University,

*Appellant*

v.

American Home Assurance Company,

*Appellee*

---

February 28, 2024

Court of Appeals Case No.
23A-PL-1413

Appeal from the Allen Superior Court

The Honorable Craig J. Bobay, Judge

Trial Court Cause No.
02D02-2108-PL-327

---

**Opinion by Judge Bailey**
Judges Crone and Pyle concur.

**Bailey, Judge.**

# Case Summary

The Trustees of Purdue University ("Purdue") appeal the trial court's order granting summary judgment to American Home Assurance Company ("American Home") upon Purdue's claim for a declaratory judgment that American Home is liable to Purdue, under an all-risks commercial insurance policy, for business interruption losses during the COVID-19 pandemic. We affirm.

# Issues

Purdue presents the issue of whether summary judgment was improvidently granted because the trial court (1) erroneously construed the policy at issue to require a physical alteration of real property for coverage; and (2) the order foreclosed Purdue's opportunity to show that some of its facilities were uninhabitable.[1]

# Facts and Procedural History

---

[1] American Home has articulated an additional issue, that is, whether summary judgment may be sustained on the alternative basis of a policy exclusion for pollutants and contaminants, inclusive of viruses. Because of our disposition of Purdue's issue, we need not address American Home's additional argument.

[3] Purdue is an Indiana public institution of higher education; it has three separately accredited campuses and operates two intercollegiate athletics programs. American Home is a New York State insurance company doing business in Indiana, from whom Purdue purchased a commercial insurance policy with an effective date of September 30, 2017 through September 30, 2020, insuring Purdue's real and personal property not subject to exclusions ("the Policy").

[4] On March 6, 2020, Indiana Governor Eric Holcomb issued Executive Order 20-02 declaring COVID-19 a disaster emergency for the State of Indiana. On March 11, 2020, the World Health Organization declared COVID-19 to be a global pandemic. Two days later, the President of the United States declared a national emergency. On March 23, Governor Holcomb issued Executive Order 20-08, which closed all non-essential businesses and ordered persons living in Indiana to stay at home through at least April 6, 2020, with some limited exceptions. The stay-at-home order was subsequently extended.

[5] On May 1, 2020, Governor Holcomb issued an executive order with a staggered approach to reopening of public entities. Effective May 11, educational institutions were permitted to open for purposes of facilitating distance learning, conducting critical research, and performing essential functions, subject to the requirement of enhanced cleaning. Additionally, local health department orders limited food service facilities to 50% capacity or 75% capacity, depending upon the reported number of local cases of COVID-19.

[6] On April 6, 2020, Purdue filed a claim with American Home for loss of income during a business interruption, identifying its date of loss as March 23, 2020. Purdue's claimed losses included those stemming from cancellation of athletic events and conferences, lower rates of housing and campus hotel occupancy, and decreased sales of food, retail items, and health services.

[7] American Home did not pay the claim but rather issued a reservation of rights letter, identifying two potential bases for non-payment:

> The insuring agreement for business interruption requires that the interruption of your business be the result of direct physical damage by a covered cause of loss. There is no claim of direct physical damage.
>
> Additionally, the COVID-19 virus is considered a contaminant or pollutant and may be specifically excluded by the policy.

(App. Vol. II, pg. 77.)

[8] On August 17, 2021, Purdue filed a complaint for a declaratory judgment against American Home, which American Home moved to dismiss. On November 1, 2021, Purdue filed its First Amended Complaint, seeking a declaration that Purdue's losses are covered under the terms of the Policy and requesting an order for the payment of such losses. A temporary stay of discovery was imposed, pending American Home's submission of an amended motion to dismiss. In April of 2022, Purdue was granted a partial lifting of the discovery stay in order to conduct discovery into extrinsic evidence relative to the meaning of various Policy provisions, and Purdue served requests for the

production of documents on American Home and non-parties. On November 23, American Home filed its motion to dismiss the amended complaint. On January 20, 2023, Purdue filed a response to American Home's motion to dismiss, attaching exhibits. Collectively, the parties submitted hundreds of pages of designated materials.

[9] On April 24, 2023, the trial court conducted a hearing on the pending motion to dismiss and advised the parties that the motion would be treated as a motion for summary judgment due to the filing of materials outside the pleadings. The trial court afforded Purdue the opportunity to request additional discovery, and Purdue declined to make any additional discovery requests.

[10] The parties then presented argument to the trial court, primarily focused upon two of this Court's decisions regarding claimed business-income insurance coverage for COVID-19 related losses: *Ind. Repertory Theatre v. Cincinnati Cas.*, 180 N.E.3d 403 (Ind. Ct. App. 2022), *trans. denied*, ("*IRT I*") and *Ind. Repertory Theatre v. Cincinnati Cas.*, 203 N.E.3d 555 (Ind. Ct. App. 2023), *trans. denied*, ("*IRT II*"). American Home argued that *IRT I* (holding that the policy under review unambiguously contemplated a physical loss or physical damage to trigger recovery) and *IRT II* (holding that the COVID-19 virus – which dies off – did not physically alter IRT's theatre) were dispositive of Purdue's claim. Purdue argued that the Policy materially differs from the policy at issue in *IRT I* and *IRT II*, in that Purdue was insured against the "risk" of physical loss or damage and the Policy "doesn't require property to [be] repaired, rebuilt, [or] replaced." (Tr. Vol. II, pg. 20.) Purdue asserted that the Policy language is

ambiguous such that "*IRT II*'s requirement that the virus doesn't cause damage doesn't matter," and "*IRT I* compels an ambiguity determination here that loss of use would be enough because [the Policy] has 'risk of' language." (*Id.* at 24, 26.) Purdue also argued that the Policy exclusion for damages from a "virus" lacked adequate specificity.

On May 23, 2023, the trial court issued its summary judgment order in favor of American Home, concluding that: the Policy language at issue is unambiguous; absent ambiguity, the trial court need not consider extrinsic materials provided as attachments; the reasoning of *IRT I* and *IRT II* applied to the Policy, which likewise limited recovery to "some type of risk of direct and physical loss or damage"; and, because "Covid particles do not create direct and physical loss or damage to property, then there is also no 'risk of' direct and physical loss or damage." (Appealed Order at 17, 19). Purdue now appeals.

# Discussion and Decision

## Standard of Review

We review a grant of summary judgment de novo. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). Drawing all reasonable inferences in favor of the non-moving parties, summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citing Ind. Trial Rule 56(C)). A fact is "material" if its resolution would affect the outcome of the case, and an issue is "genuine" if a trier of fact is required to

resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences. *Id*. A trial court's judgment arrives on appeal "clothed with a presumption of validity," and, accordingly, the challenging party "bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." *Id.* at 762.

[13] An insurance policy is a contract, subject to the same rules of construction as other contracts. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005). The interpretation of a contract presents a pure question of law. *Id.* "[B]ecause the interpretation of a contract is a matter of law, cases involving the interpretation of insurance contracts are particularly appropriate for summary judgment." *Burkett v. Am. Fam. Ins. Grp.*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000).

> Although some "special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and insureds, if a contract is clear and unambiguous, the language therein must be given its plain meaning." *Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096, 1101 (Ind. 1985). On the other hand, "'[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured." *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind. 2000) (quoting *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996)). A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms. *Ind.-Ky. Elec. Corp. v. Green*, 476 N.E.2d 141, 145 (Ind. Ct. App. 1985). In insurance policies, "an ambiguity is not affirmatively established simply because controversy exists and one party

asserts an interpretation contrary to that asserted by the opposing party." *Auto. Underwriters, Inc. v. Hitch*, 169 Ind. App. 453, 457, 349 N.E.2d 271, 275 (1976).

*Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002).

## Policy Provisions

[14]    The Policy provides, in relevant part:

SECTION I.A. - INSURING AGREEMENT

Subject to the terms and conditions of this Policy, we will pay for all risks of direct physical loss or damage by a covered cause of loss to covered property at a covered location (or within 1000 feet thereof) as described in the most recent Statement of Locations and Values on file with us.

***

SECTION V - PERILS EXCLUDED

Except as otherwise provided under the Additional Coverages, Additional Time Element Coverages or Global Coverage Extensions (and in such event, only to the extent provided therein), we do not insure loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. The following exclusions apply whether or not the loss event results in widespread damage or affects a substantial area: . . .

d. The actual, alleged or threatened release, discharge, escape or dispersal of pollutants or contaminants, all whether direct or

indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any covered cause of loss under this Policy.

However, this exclusion shall not apply to direct physical loss or damage to covered property from pollutants or contaminants caused by a covered cause of loss at the covered location, including the cost to clean-up pollutants or contaminants from covered property at the covered location resulting from such loss or damage. No coverage is provided for testing or monitoring for pollutants or contaminants. For the purpose of the exception to this exclusion only, pollutants or contaminants do not include radioactive contaminants.

\*\*\*

SECTION VI - TIME ELEMENT COVERAGES

A. We will pay the actual business income loss sustained by you due to the necessary partial or total interruption of your business operations, services or production during the period of indemnity as a result of direct physical loss or damage to: (1) covered property by a covered cause of loss or (2) property of the type insured under this Policy by a covered cause of loss which directly affects your use of the covered property, provided that you are a lessee or occupant of the premises where the direct physical loss or damage occurred.

\*\*\*

D. ADDITIONAL TIME ELEMENT COVERAGES

The following Additional Time Element Coverages and any Additional Time Element Coverages added to this Subsection by

endorsement or through the Special Terms and Conditions are subject to the terms and conditions of this Policy. All loss or damage, including business income loss and extra expense, for which coverage is provided under the Additional Time Element Coverages is subject to the sublimits of liability as shown in Item 7.C. of the Declarations, the sublimits of liability shown elsewhere in this Policy and the Policy Limit. All extra expense is further limited to the Extra Expense sublimit of liability as shown in Item 7.C. of the Declarations.

The period of indemnity for each Additional Coverage or Additional Time Element Coverage shall be the period corresponding with Business Income Option #1 (Gross Profits) or Business Income Option #2 (Gross Earnings), whichever is applicable, unless a different time period is set forth in any of the Additional Coverages or Additional Time Element Coverages.

6. EXTRA EXPENSE

We will pay loss sustained by you for extra expense during the period of indemnity resulting from direct physical loss or damage by a covered cause of loss.

***

SECTION X – DEFINITIONS

***

40. Pollutants or contaminants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value,

marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants or contaminants do not include fungus, mold or spores.

***

INDIANA STATE MANDATORY ENDORSEMENT

D. AMENDMENT OF DEFINITION OF POLLUTANTS OR CONTAMINANTS

In this Policy, the definition of pollutants or contaminants is deleted and replaced by the following: Pollutants or contaminants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, and any substances or materials identified in the Schedule, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants or contaminants do not include fungus, mold or spores. The definition of pollutants or contaminants applies whether or not such irritant, pollutant, or contaminant has any function in or on your business, operations, premises, site or location.

(App. Vol. II, pgs. 101, 121-29, 150, 171.)

## Analysis

Physical Alteration Standard.

[15]     In granting summary judgment to American Home, the trial court relied upon *IRT I* and *IRT II*. Purdue argues that the Policy is "fundamentally different" from that in the *IRT* decisions, distinguishable in that the Policy promised to pay for "all risks" of direct physical loss or damage and "does not have a period of restoration." Appellant's Brief at 35. According to Purdue, the phrase "physical loss or damage" appearing in the Policy is ambiguous and Purdue has reasonably understood it to mean that there is coverage for "a physical hazard" such as COVID-19, which "either threatens to or actually impairs the safety or function of its property." *Id.* at 28. Purdue asks that this Court embrace the "physical hazard" standard and "not abandon the wisdom of history in favor of the exceedingly narrow 'physical alteration' rule." *Id.* at 37.

[16]     *IRT I* was an appeal from the grant of partial summary judgment to Cincinnati Casualty, with the trial court having determined that the contract language "direct physical loss or direct physical damage" did not encompass IRT's claim for the loss of use of its theatre during the COVID-19 pandemic. 180 N.E.3d at 404. IRT argued that the dictionary definitions of "loss" and "damage" do not require an observable change in the condition of the property and cited to a number of pre-pandemic cases for the proposition that "physical loss" includes the rendering of property unusable or unsafe for its intended purpose "even without tangible alteration or structural damage." *Id.* at 409. This Court found that line of cases to be "readily distinguishable because they involve policies that included language providing protection from 'risk of' loss." *Id.* (citing, as an example, *Hampton Foods Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349 (8th Cir.

1986), where the "imminent danger of collapse" of a grocery store, evidenced by falling plaster and owner's order to vacate, was a covered loss).

[17]  The *IRT I* Court found instructive *Roundabout Theatre Co. v. Cont'l Cas Co.*, 302 A.D.2d 1, 751 N.Y.S.2d 4 (N.Y. App. Div. 2002).  There, a theatre had been forced to close for a month due to a street closure, and the loss of use was not covered under policy language requiring "direct physical loss or damage."  The *IRT I* Court observed that the building in *Roundabout* had been rendered "unusable for its intended purpose because of an outside factor," and continued:  "The COVID-19 pandemic in the instant case is like the construction accident in *Roundabout*."  180 N.E.3d at 410.

[18]  The *IRT I* Court then cited *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) for the proposition that "there must be some physicality to the loss or damage of property" to trigger business interruption and extra expense coverage.  180 N.E.3d at 410.  Finally, the Court found IRT's interpretation of "physical loss or physical damage" to be unreasonable because it was inconsistent with the "period of restoration" provision of the policy at issue.  *Id.*  That is, [w]ithout physical alteration or impact to IRT's premises, there can be no period of restoration[.]"  *Id.*  The Court concluded that the loss of use claim was not physical loss or physical damage as defined by the subject policy.  *Id.* at 411.

[19]  After the decision in *IRT I* was handed down, IRT pursued the alternative theory that the COVID-19 virus was present in the theatre and "physically

altered the air and surfaces," relying upon expert declarations from three scientists. *See IRT II*, 203 N.E.3d at 556. The trial court granted Cincinnati Casualty summary judgment "on this presence theory," concluding that, even if it were present, the virus "did not physically alter the air or surfaces." *Id.* at 556-57. IRT appealed and Purdue filed an amicus brief.

[20] The *IRT II* Court observed that "the trial court's decision is consistent with the great weight of authority from around the country." *Id.* at 558.[2] The Court succinctly articulated its holding: "We now join that majority and hold that the COVID virus did not physically alter IRT's theatre. *Id.* at 558. The Court acknowledged that there were some cases in which coverage had been found, in pre-COVID cases, "based on contamination by a gas, substance, or odor even though there was no 'tangible' or 'structural' alteration to the property." *Id.* (citing *Mellin v. N. Sec. Ins. Co.*, 167 N.H. 544, 115 A.3d 799 (2015) (cat urine odor); *Sentinel Mgmt. Co. v. N.H. Ins. Co.*, 563 N.W.2d 296 (Minn. Ct. App. 1997) (asbestos fibers): *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, Civ No. 2:12-cv-04418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) (ammonia); and *Matzner v. Seaco Ins. Co.,* No. CIV. A. 96-0498-B, 1998 WL 66658 (Mass. Super. Ct. Aug. 12, 1998) (carbon monoxide)). The Court characterized those

---

[2] We find it noteworthy that, among those authorities referenced was *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, 44 F.4th 1014 (7th Cir. 2022). In *Circle Block*, the Court applied Indiana law, examined an "all risk" insurance policy covering direct physical loss or damage to property, and rejected the argument that the virus's presence on surfaces or in the air could physically alter property. *Id.* at 1020-21. The "all risk" policy covering the insured hotel "included business income and extra expense coverage, civil authority coverage, dependent property coverage, communicable disease coverage, and business access coverage." *Id.* at 1017.

as cases in which "the contamination involved … left insured property physically unusable or uninhabitable, at least temporarily." *Id.* at 559. The Court then plainly distinguished those from COVID-based claims: "The COVID virus, on the other hand, does not render property unusable or uninhabitable. … We agree with the courts that have distinguished the COVID virus from the contamination at issue in the pre-COVID cases cited by IRT." *Id.*

[21] In summary, the Court stated:

> The issue in this case is not whether IRT lost income because of the COVID-19 pandemic. It undoubtedly did, just like countless other businesses. The issue is whether that loss is covered by IRT's insurance policy. The answer is no, because the COVID virus did not physically alter the theatre or otherwise render it physically useless or uninhabitable. We therefore affirm the trial court's grant of summary judgment for Cincinnati.

*Id.*

[22] Purdue claims that it procured an "all risk" policy from American Home not excluding COVID-19. An "all risk" policy is one which provides coverage "for all fortuitous losses in the absence of fraud or misconduct of the insured, unless the policy contains a specific provision expressly excluding the loss from coverage." *Associated Aviation Underwriters v. George Koch Sons, Inc.*, 712 N.E.2d 1071, 1073 (Ind. Ct. App. 1999), *trans. denied*. Here, the Policy promises to "pay for all risks of direct physical loss or damage by a covered cause of loss," if not excluded. But Purdue experienced no covered loss because COVID-19

does not cause "direct physical loss or damage". The Policy's inclusion of the words "all risk" would not cause reasonable minds to differ as to what constitutes "direct physical loss or damage." Accordingly, the broader language does not render the phrase "direct physical loss or damage" ambiguous.

[23] As Purdue has pointed out, the Policy has a period of indemnity clause as opposed to a strict period of time in which to restore, repair, or replace. *IRT I* looked to the "restore, repair, or replace" language in the insurance policy before it as additional grounds upon which IRT's interpretation of "physical loss or physical damage" was unreasonable. 180 N.E.3d at 410. But the fact that the Policy lacks the precise requirement of the IRT policy does not obviate the ultimate requirement that there must be "physicality to the loss or damage of property." *Id.* Here, the trial court was not constrained from applying the "physical alteration" standard of *IRT I.*

[24] The trial court found no ambiguity in the Policy in accordance with *IRT I*, and applied the reasoning of *IRT II* in explaining that there is no "risk" that Covid particles cause physical damage:

> In accordance with *IRT II*, the Court concludes that as Covid particles do not create direct and physical loss or damage to property, then there is also no 'risk of' direct and physical loss or damage. The Court also concludes that although Purdue's property includes many buildings and structures on multiple campuses, as opposed to IRT's one theater, this is of no consequence in the application of *IRT II*.

Appealed Order at 19. The trial court did not misconstrue the law, as set forth in *IRT I* and *IRT II*.

[25] Shortly after *IRT II* was decided, and before the Indiana Supreme Court denied transfer in that case, the Seventh Circuit decided a similar case, applying Indiana law. *Stant USA Corp. v. Factory Mut. Ins. Co.*, 61 F.4th 524 (7th Cir. 2023). Stant filed suit seeking a declaratory judgment that they were entitled to recover under an "all risk" commercial insurance policy issued by Factory for lost income as a result of "physical loss or damage" at its' customers' properties caused by the COVID-19 virus. *Id.* at 525. On appeal of the grant of the insurer's motion to dismiss, the Court first turned to the language of the policy, which covered property against "all risks of physical loss or damage, except as hereinafter excluded." *Id.* at 526.

[26] The Court observed "we have consistently held that temporary loss of use or restrictions on use do not constitute 'physical' damage or loss," *id.*, and cited as an example *Sandy Point Dental P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021). In *Sandy Point*, the Court held that the word 'physical' modified both damage and loss, and there must be "some physicality to either that loss or damage" in order to fall within policy coverage. *Id.* at 332. Support for the interpretation was found with reference to the policy's stated period of restoration, which contemplated "the date by which the property should be repaired, rebuilt or replaced." *Id.* at 333. That is, without a physical alteration, there would be no need for repair, rebuilding, or replacement. *Id.* Sandy Point's allegations – that the continuous presence of the virus on and around

the premises rendered the premises unsafe and unfit for the intended use, and thus caused physical damage – were not sufficient to allege direct physical loss. *Id.* at 335. They were addressed to a loss of the property's intended or preferred use but did not describe how the presence of the virus or the resulting closure order physically altered its property. *Id.*

[27] The *Stant* Court concluded that, although there was some difference between the language of Stant's commercial policy and the *Sandy Point* policy because the latter included the word "direct" as a qualifier, the same "essential requirement" was imposed by the policy. *Stant*, 61 F.4th at 527. "The requirement that the property loss or damage must be 'physical' was the limitation that mandated a physical alteration to the property." *Id.* Observing that the "technical difference in language does not portend a different result," the Court held that Stant's claim did not fall within the coverage of the policy for physical property loss or damage. *Id.* Here, the trial court likewise properly acknowledged the essential requirement of a physical alteration.

Uninhabitability.

[28] Purdue also contends that it was deprived of the opportunity to show that some of its buildings were uninhabitable. It suggests that it could have recovered under the Policy with sufficient factual development. However, the relevant allegations of Purdue's complaint consist of plain assertions that the presence of COVID-19 was the causation of any such uninhabitability. Although the *IRT II* panel recognized that insurance coverage might exist for uninhabitability in

certain circumstances, the decision plainly rejected the idea that COVID could independently render a structure uninhabitable: "The COVID virus, on the other hand, does not render property unusable or uninhabitable." 203 N.E.3d at 559.

[29] The Policy is not ambiguous, and the trial court did not err in applying the law to the claim for a declaratory judgment. Because Purdue's claim does not fall within the coverage of the Policy for physical property loss or damage, we need not address the alternative argument that the claim would fall within the pollution and contamination exclusion of the Policy.

## Conclusion

[30] American Home has shown the absence of a genuine issue of material fact and demonstrated its entitlement to judgment as a matter of law regarding coverage under the Policy. Accordingly, the trial court did not err in granting summary judgment in favor of American Home.

[31] Affirmed.

Crone, J., and Pyle, J., concur.

ATTORNEYS FOR APPELLANT

George M. Plews
Gregory M. Gotwald
Joanne R. Sommers
Christopher E. Kozak
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

James M. Hinshaw
Margaret M. Christensen
Dentons Bingham Greenebaum LLP
Indianapolis, Indiana

Keith Moskowitz
Dentons US LLP
Chicago, Illinois

Erin Bradham
Doug Janicik
Dentons US LLP
Phoenix, Arizona