# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1446

_____

Reliance Insurance Company     *
in Liquidation,     *
    *
        Appellant,     *
    *
       v.     *   Appeal from the United States
    *   District Court for the Eastern
Stephen Chitwood;     *   District of Missouri.
Continental Western Insurance     *
Company,     *
    *
        Appellees.     *

_____

Submitted: October 10, 2005
Filed: January 10, 2006

_____

Before ARNOLD, BOWMAN, and MURPHY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Reliance Insurance Company sued Stephen Chitwood and Continental Western Insurance Company for reimbursement for the cost of settling a lawsuit brought by several people injured in a motor vehicle accident involving Mr. Chitwood. The district court granted the summary judgment motions of Mr. Chitwood and Continental Western, and we affirm these orders. We believe, however, that the district court erred when it determined that Reliance was not entitled to prejudgment interest on attorney's fees and costs that it incurred while defending Continental

Western's insured. We therefore reverse that part of the district court's judgment and remand to the district court for further proceedings.

## I.

Mr. Chitwood agreed to lease a tractor-semitrailer that he owned to Foster Brothers. Under that arrangement, Mr. Chitwood was to deliver Foster Brothers's products in a number of Midwestern states and Mr. Chitwood promised to indemnify Foster Brothers for any loss attributable to his negligence. Both Mr. Chitwood and Foster Brothers obtained liability insurance policies covering the operation of the truck: Mr. Chitwood bought a policy with a maximum limit of $750,000 from Continental Western, and Foster Brothers bought a policy providing up to $1 million in coverage from Reliance. Both policies covered Mr. Chitwood and Foster Brothers as insured parties.

The interplay between the two insurance policies became relevant when Mr. Chitwood's truck collided with another vehicle. Three occupants of that vehicle were injured in the crash and they sued Foster Brothers. Reliance took the lead in defending the suit and, after some delay, Continental Western provided an attorney to participate in the defense. The insurers agree that under the terms of the respective policies Continental Western was the primary insurer and Reliance was the excess carrier.

Shortly before trial was scheduled to begin in the personal injury action, Continental Western settled with the plaintiffs in that action. In exchange for a $600,000 payment, the plaintiffs released Continental Western from any liability and agreed to limit any other recovery against Foster Brothers to the proceeds of the Reliance insurance policy. The plaintiffs also agreed that they would not look to the Reliance policy for payment unless they obtained a judgment against Foster Brothers in excess of $750,000, and that, if they obtained such a judgment, they would seek recovery from Reliance for only that portion of the judgment that exceeded $750,000.

*Cf.* Mo. Rev. Stat. § 537.065. When Reliance received word of Continental Western's settlement, it reached its own settlement agreement with the plaintiffs in the personal injury action. Reliance agreed to pay $250,000 in exchange for the plaintiffs' agreement to dismiss their lawsuit with prejudice.

The resolution of the personal injury case marked the beginning of the present action. In its first count, Reliance, as the assignee of Foster Brothers's indemnity rights under the lease agreement, sought $250,000 from Mr. Chitwood. In its second count, Reliance alleged that because Continental Western had paid only $600,000 in the settlement, it had not exhausted its policy limits and therefore owed a duty of indemnity to Reliance for $150,000. In its third count, Reliance argued that Continental Western breached a duty of loyalty owed by a primary insurer to a secondary insurer. Reliance also contended that Continental Western owed $41,244.25 in attorney's fees that Reliance incurred in the personal injury action. Reliance sought prejudgment interest on all amounts claimed.

After all the parties filed motions for summary judgment, the district court, applying Missouri law, awarded summary judgment to Mr. Chitwood and Continental Western. The court concluded that the so-called anti-subrogation rule prohibited Reliance's action against Mr. Chitwood, who was one of its insureds. The court also determined that Reliance's claims against Continental Western failed because Continental Western's settlement agreement exhausted its liability, and because Missouri did not recognize a duty of good faith between primary and secondary insurers (and even if it did, there was no evidence of any bad faith on Continental Western's part). Continental Western conceded that it owed the $41,244.25 in attorney's fees and costs to Reliance, and the district court entered judgment for Reliance in that amount. Without comment, the district court rejected Reliance's request for prejudgment interest.

## II.

## A.

We deal first with Reliance's effort to recover from Mr. Chitwood the $250,000 that it paid to settle the personal injury claims against Foster Brothers. Although Reliance conceded that Mr. Chitwood was covered as an "insured" under its policy, Reliance nonetheless contends that as the assignee of Foster Brothers's rights it can enforce Mr. Chitwood's promise to indemnify Foster Brothers for any loss attributable to his negligence.

Missouri law recognizes the anti-subrogation rule, which is that "where an insurance company attempts to recover, as a subrogee, from a coinsured generally covered under the policy, whose negligent act occasioned the loss, the action must fail in the absence of design or fraud on the part of the coinsured." *Sherwood Med. Co. v. B.P.S. Guard Services, Inc.,* 882 S.W.2d 160, 162 (Mo. Ct. App. 1994) (internal quotation omitted). The Missouri courts have held that "allow[ing] an insurer to sue for recovery against one of its own insured would violate the basic principles of subrogation and equity, as well as violate sound public policy." *Jos. A. Bank Clothiers, Inc. v. Brodsky*, 950 S.W.2d 297, 303 (Mo. Ct. App. 1997). The anti-subrogation rule prevents an insurer from passing its loss to the insured, thereby avoiding coverage for the very risk for which it accepted premiums, and it prevents insurers from having a conflict of interest that might deprive an insured of a vigorous defense. 16 Couch on Insurance § 224:3 (3d ed. 1995 & Supp. 2004); *see also North Star Reins. Corp. v. Continental Ins. Co.,* 82 N.Y.2d 281, 294-95, 624 N.E.2d 647, 653 (1993).

Reliance offers two reasons why the anti-subrogation rule should not apply here. The first is that this case involves an assignment of rights from Foster Brothers to Reliance, rather than a traditional subrogation action. Although there are differences between actions based on assignment and actions based on subrogation,

*see Keisker v. Farmer*, 90 S.W.3d 71, 74 (Mo. 2002), those differences are not relevant in the present circumstances: Reliance is still seeking to recover from its own insured the cost of the very risk that was the subject of the policy. The purpose of the anti-subrogation rule is to prevent such actions. Other courts have applied the rule in cases that were outside the realm of traditional subrogation. *See*, *e.g.*, *ELRAC, Inc. v. Ward*, 96 N.Y.2d 58, 76-77, 748 N.E.2d 1, 9 (2001); *Jones Lang Wootton USA v. LeBoeuf, Lamb, Greene & MacRae*, 674 N.Y.S.2d 280, 289 (N.Y. App. Div. 1998). In fact, in a case involving this precise factual situation and, coincidentally, Reliance itself, the North Carolina Court of Appeals determined that an insurer could not recover from one of its insureds under the indemnity agreement between a lessor and lessee of a tractor-trailer. *Reliance Ins. Co. v. Morrison*, 59 N.C. App. 524, 297 S.E.2d 187 (1982). We believe that this was the correct result.

Reliance also maintains that the anti-subrogation rule should not apply because there is another insurer. Reliance argues that the public policy goals of the anti-subrogation rule are not implicated when the dispute is between two insurers. That is true enough. *See* 16 Couch on Insurance § 224:6. But we are not convinced that the claim against Mr. Chitwood can be recast as merely a dispute between insurers. The first count of the complaint filed in the district court sought recovery directly from Mr. Chitwood. Continental Western is named in the second and third counts of Reliance's complaint, but not in the first. We cannot ignore the fact that Reliance's first count is an attempt to hold its own insured responsible for the consequences of a risk that was covered by Reliance's policy. We therefore affirm the district court's entry of summary judgment in Mr. Chitwood's favor on that count.

B.

Reliance sought $150,000 from Continental Western under the theory that Reliance, as the excess insurer, was not obligated to pay anything until the primary insurer had paid the full amount of its policy limit. In general, an excess insurer does not pay until the limit of the insured's primary insurance is "exhausted." *Smith v.*

*Wassau Underwriters Ins. Co.*, 977 S.W.2d 291, 293 (Mo. Ct. App. 1998). Reliance contends that because Continental Western settled the case for $600,000, it did not exhaust the limits of its $750,000 policy. The district court determined that Continental Western's settlement, which included the personal injury plaintiffs' promise to seek from Reliance only the amount that any judgment that they obtained exceeded $750,000, exhausted its liability and triggered Reliance's obligation as excess insurer.

In *Handleman v. U.S. Fidelity & Guar. Co.*, 18 S.W.2d 532, 534-35 (Mo. Ct. App. 1929), the Missouri Court of Appeals held that exhaustion did not require an insurer to pay the full dollar value of a policy. Rather, an insurance policy is exhausted "when the insured proves that claims aggregating the full amount of the specific policy have been settled thereunder and full liability of the insurer discharged." *Id.* at 534. In *U.S. Fidelity & Guar. Co. v. Safeco Ins. Co. of Am.*, 555 S.W.2d 848, 853 (Mo. Ct. App. 1977), the court cited *Handleman* and determined that an excess insurer's obligation was triggered when the primary insurer reached a settlement for less than the policy limit.

Reliance attempts to distinguish these cases on the ground that its action against Continental Western is based on non-contractual indemnity. In support, it cites several cases in which courts decided that an indemnification agreement between parties controls which party's insurance is primary. *See Federal Ins. Co. v. Gulf Ins. Co.*, 162 S.W.3d 160, 164-65 (Mo. Ct. App. 2005); *Wal-Mart Stores, Inc. v. RLI Ins. Co*, 292 F.3d 583, 588-590 (8th Cir. 2002). In this case, however, there is no dispute as to which policy is primary.

The details of the settlement agreement confirm that Continental Western fulfilled its obligation. Had Reliance elected to proceed to trial, it could have done so with the assurance that it would not be required to pay the first $750,000 of any adverse judgment. This is precisely what Reliance bargained for as the excess insurer.

Reliance's decision to settle does not change the fact that Continental Western exhausted the limits of its policy. Reliance's contention that Continental Western was obligated to pay its $750,000 policy limit is inconsistent with the holdings of *Handleman* and *U.S. Fidelity*. We therefore affirm the district court's summary judgment with respect to the second count in Reliance's complaint.

## C.

Reliance contends that Missouri would recognize the "modern trend for courts and legislatures to impose duties of good faith and fair dealing on the relationship between primary and excess carriers," 14 Couch on Insurance § 198:20. Missouri courts, however, have not recognized a direct duty of good faith between primary and secondary insurers. They are in good company, as "the majority of jurisdictions describe the duty owed by the primary insurer to the excess insurer as derivative from that owed to the insured." *Phico Ins. Co. v. Aetna Cas. and Sur. Co. of Am.,* 93 F. Supp. 2d 982, 989 (S.D. Ind. 2000); *see also Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1178 (7th Cir. 1994).

We also note that even if Missouri were to recognize such a duty, Reliance has not shown that there was a breach of that duty. By obtaining a promise from the plaintiffs in the personal injury case to execute against Reliance's policy only to the extent that any judgment obtained exceeded $750,000, Continental Western protected Reliance's position as excess insurer. Because Continental's settlement was authorized by Missouri law and did not prejudice Reliance, we affirm the district court's grant of summary judgment to Continental Western on count three of the complaint.

## III.

Before Continental Western appeared to defend Foster Brothers in the personal injury case, Reliance incurred $41,244.25 in attorney's fees and costs. Although the

district court entered judgment in Reliance's favor for this amount, it denied Reliance's claim for prejudgment interest.

The availability of prejudgment interest in this case is governed by Mo. Rev. Stat. § 408.020, which states that "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made." Continental Western contends that this statute provides no basis for recovery of prejudgment interest because it had no contract with Reliance. The Missouri courts, however, have broadly interpreted the term "accounts" in § 408.020. The Missouri Supreme Court has described "the term 'account' [as] equivalent to 'claim,' or 'demand' ... The primary idea of account ... is some matter of debt and credit, or demands in the nature of debt and credit, between parties." *Coleman v. Kansas City*, 173 S.W.2d 572, 575 (Mo. 1943) (internal quotations omitted). The Missouri courts have allowed the recovery of prejudgment interest on oral contracts for services rendered, *Burger v. Wood*, 446 S.W.2d 436, 443 (Mo. Ct. App. 1969), and also on quantum meruit claims for services rendered, *Laughlin v. Boatmen's Nat'l Bank of St. Louis*, 189 S.W.2d 974, 979-80 (Mo. 1945).

Recent case law supports interpreting § 408.020 to allow prejudgment interest on a claim for indemnity by an excess insurer against a primary insurer. The Missouri Court of Appeals has allowed prejudgment interest when one insurer paid part of another insurer's obligation. *See Weinberg v. Safeco Ins. Co. of Ill.*, 913 S.W.2d 59, 62 (Mo. Ct. App. 1995). Applying Missouri law, we have allowed an excess insurer to recover prejudgment interest on expenses advanced on behalf of the primary insurer. *Federal Ins. Co. v. St. Paul Fire and Marine Ins. Co.*, 985 F.2d 979, 980 (8th Cir. 1993) (per curiam). These decisions promote one of the general purposes of prejudgment interest, namely, "to compensate for the use of or loss of use of money to which a person is entitled." *Catron v. Columbia Mut. Ins. Co.*, 723 S.W.2d

5, 7 (Mo. 1987). In the instant case, Reliance advanced money on behalf of Foster Brothers that Continental Western was legally obligated to pay. We believe therefore that the district court erred in denying Reliance prejudgment interest on that amount.

Having determined that Missouri law authorizes prejudgment interest, at the rate of nine percent per annum, on the $41,244.25 judgment in Reliance's favor, it remains to consider when the prejudgment interest began to accrue. As we noted above, § 408.020 allows prejudgment interest "on accounts after they become due and demand of payment is made." Although Reliance asks that prejudgment interest be calculated from August 4, 2001 (the day after the Reliance settled the personal injury case against Foster Brothers), the record before us does not reveal whether Reliance made a demand of payment on or before that date. Absent an earlier demand, Missouri law considers the date that the lawsuit was filed as the date of demand. *General Aggregate Corp. v. LaBrayere,* 666 S.W.2d 901, 910 (Mo. Ct. App. 1984). Because we cannot determine if Reliance made a demand prior to filing its suit, we believe a remand to the district court is necessary so it can determine the date on which prejudgment interest began to accrue on the $41,244.25 that Continental Western owed Reliance.

IV.

For the reasons stated, we affirm that part of the district court's order granting summary judgment in favor of Mr. Chitwood and Continental Western, we reverse the district court's denial of prejudgment interest on the $41,244.25 that Continental Western tendered to Reliance, and we remand the case to the district court for a determination of when prejudgment interest began to accrue and entry of a judgment in favor of Reliance for the appropriate amount of prejudgment interest.

_____